Ramonita Cintron PEREZ,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,
Defendant, Appellee.

No. 91–1282.

United States Court of Appeals,
First Circuit.

Submitted Aug. 14, 1991.
Decided Dec. 30, 1991.

Raymond Rivera Esteves and Juan A. Hernandez Rivera, on brief, for plaintiff, appellant.

Daniel F. Lopez Romo, U.S. Atty., Jose Vazquez Garcia, Asst. U.S. Atty., and Jo-

seph E. Dunn, Asst. Regional Atty., Office of the Gen. Counsel, Dept. of Health and Human Services, on brief, for defendant, appellee.

Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.

PER CURIAM.

Claimant Ramonita Cintron Perez filed an application for Social Security disability benefits on June 9, 1988, alleging ischemic, nervous, and back conditions. After a hearing, the Administrative Law Judge (ALJ) conceded that claimant had a severe impairment or impairments that precluded her return to her former work as a fastener sewing machine operator. The ALJ found, however, that claimant retained the exertional residual functional capacity to perform light work. The ALJ further found that claimant's mental condition significantly restricted her capacity to perform a full range of light work. At the hearing the ALJ received testimony from a vocational expert that despite claimant's impairments, there existed a significant number of light jobs in the economy claimant could perform, such as garment folder, garment bagger, garment turner, and hand trimmer. On the basis of this testimony, the ALJ found claimant not disabled at step 5 of the sequential evaluation process, 20 C.F.R. § 404.1520(f), on the ground that the Secretary had demonstrated the existence of jobs in the economy that claimant could perform. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed. Claimant appeals. We affirm.

■ Claimant first contends that the ALJ's conclusion that claimant can meet the exertional requirements of light work is not supported by substantial medical evidence regarding claimant's residual functional capacity. It is true that the record does not contain any medical evaluation of claimant's physical residual functional capacity. It is true, too, that an ALJ is not qualified to interpret raw medical data in functional terms. *Rodriguez v. Secretary of Health and Human Services*, 893 F.2d

401, 403 (1st Cir.1989); *Rosado v. Secretary of Health and Human Services*, 807 F.2d 292, 293–94 (1st Cir.1986); *Berrios v. Secretary of Health and Human Services*, 796 F.2d 574, 576 (1st Cir.1986); *Perez Lugo v. Secretary of Health and Human Services*, 794 F.2d 14, 15 (1st Cir.1986). We have held, accordingly, that where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence. *Rivera–Figueroa v. Secretary of Health and Human Services*, 858 F.2d 48, 52 (1st Cir.1988); *Rivera–Torres v. Secretary of Health and Human Services*, 837 F.2d 4, 7 (1st Cir. 1988).

■ We do not think, however, that these authorities preclude affirmance of the ALJ's conclusions in the instant case. In *Rivera–Figueroa* and *Rivera–Torres*, we found deficient the ALJ's functional evaluation of a claimant's severe exertional impairment. In the instant case, by contrast, the ALJ—although he did find that claimant could not lift heavy or medium weights—concluded,

Consequently, by the objective medical evidence in record there is no evidence that the claimant has any exertional limitation for the performance of work activities. The record only revealed the occurrence of a transient ischemic attack that resolved without any sequela and which has not recurred. The claimant only complained of dizziness but it has not been established that this condition is a manifestation of the recurrence of the ischemic attacks and her treatment records does not reveal that the treating physicians considered this symptom or condition so severe as to require more intensive treatment.

Although there is no dispute that claimant suffers from severe non-exertional impairments, a finding that claimant does not suffer from any impairment posing severe or significant *exertional* restrictions would

obviate the need for a medical assessment of exertional residual functional capacity.

■ The question then is whether the ALJ's finding is supported by substantial evidence. We conclude that it is. The medical evidence is unanimous that claimant on September 10, 1986, suffered a two-hour vestibulovasilar transient ischemic attack which included a sensation of heaviness in her head, numbness of the left arm, face, mouth, and tongue, and difficulty talking. Claimant testified that she had suffered a previous similar episode, but there is no medical evidence of any recurrence of these attacks. Claimant says that she suffers occasional dizzy spells, but there is no medical evidence to suggest that her occasional dizziness poses exertional restrictions. Dr. Eduardo Ulloa, a consulting neurologist, examined claimant on November 29, 1988, and concluded that "[t]he neurological evaluation is within normal limits." Dr. Tomas Hernandez Ortiz, a treating neurologist, stated in a May 19, 1989 report that claimant's "neurological evaluation was completely negative, except with a high degree of anxiety and depression." An anxiety condition is not, of course, an exertional impairment. In the light of this evidence, we conclude that substantial evidence supported the ALJ's finding that claimant's ischemic condition did not pose a significant exertional limitation.

Although claimant also mentioned other conditions that might pose exertional limitations—a back condition and cervical spasms—there was a paucity of medical evidence in the record concerning these conditions. Furthermore, Dr. William Galindez, a treating psychiatrist, stated on a June 15, 1988 "mental impairment evidence report" form, when asked to list "[n]onpsychiatric medical conditions which may affect the claimant's ability to do competitive work," that claimant's nonpsychiatric medical conditions were "[n]oncontributory, except for cerebral ischemia." We think the ALJ was entitled, on this record, to conclude that neither claimant's ischemia, nor any other claimed impairment, posed a significant exertional limitation. Claimant's former job having involved light work,

there was substantial evidence to support the ALJ's finding that claimant retained the exertional capacity for light work.

■ Claimant next challenges, for lack of substantial evidence, the ALJ's conclusion that claimant's mental condition permitted her to perform the jobs identified by the vocational expert. Claimant's mental condition was evaluated by Dr. Jose Rios Cervantes, a consulting psychiatrist, who examined claimant on November 23, 1988, and concluded that she suffered "atypical depression with anxiety traits." Dr. Rios found her psychomotor activity retarded, her verbalization slow, scarce, low in tone of voice, and tearful, and her conversation monosyllabic. She was logical, coherent, and relevant, with poor narrative capacity, affected attention and concentration, adequate associations of ideas, inadequate ability for comprehension, calculation, and learning, untrustworthy memory, and orientation good only in person and space. He found her able to handle funds, with no obsessions, deliriums, compulsions, phobias, or hallucinatory and illusory disorders. Although some other medical evidence in the record described a more serious mental condition, the ALJ was permitted to rely on Dr. Rios' conclusions. The ALJ's hypothetical to the vocational expert consisted of the ALJ reading Dr. Rios' report aloud and then asking whether a claimant with those mental impairments could perform any work in the economy. Since this hypothetical was supported by substantial evidence—Dr. Rios' findings—the ALJ was entitled to rely on the vocational expert's testimony that a claimant with those mental impairments can perform a number of light jobs in the garment industry.

Claimant also argues that the ALJ did not take sufficient account of claimant's other non-exertional impairments—pain, numbness, dizziness, and sleepiness caused by medications—and did not consider all of claimant's impairments in combination. We disagree.

■ The ALJ discounted claimant's subjective complaints of disabling pain after noting the following observations. The

ALJ stated that "at the hearing proceedings and at the District Office observations the claimant did not appear to be preoccupied with personal discomfort. No signs which could be related with physical distress were noticed...." Later, the ALJ again noted that "claimant's appearance at the District Office interviews and at the hearing do not corroborate such deteriorated state as described" for claimant's daily activities. Given the paucity of medical evidence to suggest an objective physical basis for disabling pain, we think the ALJ's own observation of claimant's demeanor at the hearing constituted substantial evidence for the ALJ's conclusion and was adequate to meet the requirements of *Avery v. Secretary of Health and Human Services*, 797 F.2d 19 (1st Cir.1986). Moreover, the vocational expert testified that claimant could perform the jobs he identified even if she suffered a constant light pain.

As for numbness, claimant testified that she suffered numbness twice, the last time in 1986. There is no medical evidence of numbness since then. Moreover, although the vocational expert indicated in his testimony that daily numbness would preclude work, he also implied that more occasional numbness of unspecified frequency would not prevent claimant from performing the jobs he had identified.

■ According to claimant, she experiences dizzy spells "sometimes every two weeks." The vocational expert testified that although dizzy spells three or four times a week for two or three hours each would preclude work, "occasional dizziness[, o]nce a month" would not. Especially in light of the negative neurological findings discussed above, the ALJ was entitled to rely on this testimony to conclude that claimant's occasional dizziness would not preclude performing the jobs identified by the vocational expert.

The vocational expert did testify that if claimant's medications made her sleepy on a daily basis, she could not work. However, although claimant testified that her medications make her sleepy, there was no mention of this anywhere in the medical evidence. Also, claimant testified that because she cannot sleep at night, she sometimes takes Limbitrol, a sleeping pill, during the day.

■ Finally, the ALJ's opinion expressly considers all of claimant's impairments in combination. It is true that the ALJ relied on the testimony of the vocational expert, and that the ALJ did not present the vocational expert with a single hypothetical that catalogued all of claimant's impairments. Rather, the ALJ presented the vocational expert with claimant's mental condition, and claimant's attorney subsequently elicited testimony regarding possible non-exertional impairments such as pain, numbness, dizziness, and sleepiness due to medications. In posing those questions, however, claimant's attorney expressly spoke in terms of "adding" particular impairments to the profile already presented by the ALJ. Thus, the vocational expert's testimony, relied on by the ALJ, did consider claimant's impairments in combination.

The judgment of the district court is affirmed.