993 F.2d 1530
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Angel Lopez RODRIGUEZ, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 92-2297.
 United States Court of Appeals,
First Circuit.
 May 4, 1993
 
 Appeal from the United States District Court for the District of Puerto Rico
 Raymond Rivera Esteves and Juan A. Hernandez Rivera on brief for appellant.
 Daniel F. Lopez Romo, United States Attorney, Jose Vazquez Garcia, Assistant United States Attorney, and Robert J. Triba, Assistant Regional Counsel, Department Health and Human Services on brief for appellee.
 D. Puerto Rico.
 AFFIRMED.
 Before Breyer, Chief Judge, Torruella and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Angel Lopez Rodriguez appeals the judgment of the district court affirming a final decision of the Secretary of Health and Human Services ("Secretary") that appellant did not meet the disability requirements of the Social Security Act.
 
 
 2
 Appellant's application, filed April 13, 1989, alleged an inability to work beginning October 15, 1984. Because of an earlier disposition of his previous applications, the period of alleged disability under review here begins October 1, 1987 and ends December 31, 1989, when appellant's insured status expired.[1] The current application was denied, appealed, and denied again. After a de novo hearing, the Administrative Law Judge ("ALJ") found that appellant had a residual functional capacity for the full range of light and sedentary work, and so was not under a disability as defined in the Act. The Appeals Council denied review. An appeal was taken to the district court, where a magistrate-judge concluded that the Secretary's decision was supported by substantial evidence. Objections to the magistrate's report were rejected by the district court judge in a lengthy opinion. The district court also adopted the magistrate's findings and report in full, affirming the Secretary's decision. We, too, affirm.
 
 
 3
 Appellant claimed an inability to work due to a nervous condition, and heart and back problems accompanied by severe pain. Applying the sequential analysis required by the regulations, the ALJ found that in combination appellant's conditions were severe, but they did not meet or equal any of the listed impairments. 20 C.F.R. §§ 404.1520, 404.1520a. Appellant's conditions, nevertheless, were found to prevent him from returning to his past relevant work as a truck driver.
 
 
 4
 Appellant does not dispute the above findings. He takes issue, however, with the ALJ's finding at step five, that despite his conditions, he has the residual functional capacity to engage in the full range of unskilled light and sedentary jobs available in the economy. Appellant argues that the ALJ mistakenly determined that appellant had no objective medical impairment likely to cause the severe degree of pain alleged, improperly weighed the testimonial evidence of pain, and erred in relying on 20 C.F.R. Part 404, Supt. P, App. 2, Tables 1, 2 (the "grid"), rather than a vocational expert.
 
 
 5
 Our standard of review is whether the Secretary's findings are supported by "substantial evidence." We will affirm the Secretary, "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Secretary of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Secretary of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[2]
 
 
 6
 We have no difficulty finding substantial support in the record for the ALJ's resolution of the purported conflicts in the medical evidence. As to appellant's heart condition, the record shows that appellant began complaining of chest pain of an unknown origin in March, 1988. Diagnoses included arthralgia, controlled hypertension and chest wall syndrome. Although an initial electrocardiogram showed a first degree atrioventricular block leading to a diagnosis of angina, three later electrocardiograms and a stress test were normal. The ALJ's conclusion that appellant's chest condition was not ischemic in nature was thus logically dictated by the medical findings and tests in the record.
 
 
 7
 There was a somewhat starker conflict in the evidence relating to appellant's back condition. Appellant was treated by a chiropractor between December, 1988 and May, 1989. The chiropractor reported that appellant showed a limited range of motion and severe pain in the cervical and lumbar areas, muscle spasm, poor motor function in his arms, a fair ability to walk on heels and toes and stiff gait, but normal reflexes and no atrophy. The chiropractor diagnosed an unstable lower back and possible discogenic disease, with a poor prognosis.
 
 
 8
 By contrast, a consulting internist who examined appellant in June, 1989 reported observing normal joints with no swelling, tenderness nor decreased range of motion, a normal gait, coordination and reflexes. X-rays of the cervical spine were also normal, reflecting preserved disk spaces. Lumbar region lateral flexion was normal, forward flexion was reported to be a full 90 degrees, but with some pain. The internist diagnosed back pain secondary to paravertebral muscle spasm.
 
 
 9
 The ALJ fully credited the internist's report. He declined to assign controlling weight to the treating chiropractor's diagnoses because they were contradicted by the other substantial objective medical evidence in the record, including x-rays. He carefully explained his conclusions as required by the regulations. 20 C.F.R. § 404.1527(d)(2) (1991). We have no doubt that the ALJ's resolution of these conflicts was reasonable, within his competence, and amply supported by the record. Rodriguez, 647 F.2d at 222.
 
 
 10
 As to appellant's nervous condition, the ALJ concluded that it placed no limitation on appellant's ability to work. This conclusion was also well supported by the medical evidence. Appellant had been referred by his attorneys to a mental health center in March, 1989, where he was diagnosed as suffering from a mild anxiety disorder. After small doses of Vistaril were prescribed, appellant reportedly remained stable and improved. The diagnosis was confirmed by later evaluations in which appellant was repeatedly described as oriented, alert, coherent and relevant, having adequate logic, judgment and memory. Although it was noted that appellant had slight difficulty maintaining social functioning, concentration, and persistence of pace, two residual mental capacity assessments concluded that he retains the abilities to perform routine work tasks and to cope with the demands of a work environment. These assessments are sufficient to show that appellant's mental capacity to engage in unskilled or semi-skilled sedentary work remains intact. See Ortiz, 955 F.2d at 769-70.
 
 
 11
 In sum, the record amply supports the ALJ's determination that the credible diagnoses failed to show any objective medical impairment reasonably associated with the severe degree of pain and functional limitations alleged. Moreover, there were no reports of any other clinically verifiable symptoms of severe pain.
 
 
 12
 We also find no error in the ALJ's evaluation of appellant's subjective complaints of pain. In accordance with the guidelines set forth in Avery v. Secretary of HHS, 797 F.2d 19, 21 (1st Cir. 1986), the ALJ considered appellant's testimony in light of the other record evidence. Appellant described his current pain as radiating from under the armpit and back; said that his vertebral column feels crooked, and his arms feel dead. He also described strong, sharp chest pain, accompanied by nausea and shortness of breath, at times so severe that he claimed to lose consciousness. And he testified to feelings of extreme anxiety and palpitations, as well as difficulty sleeping.
 
 
 13
 As the ALJ noted, appellant's subjective description was corroborated by neither medical nor lay observations. In three visits to the District Office, and during the residual mental capacity evaluations, appellant showed no signs of any impairment consistent with severe pain. The ALJ noted, as background, that shortly before the current disability period, appellant himself had described his daily activities as watching television, reading the papers and the Bible, going to church almost daily, occasionally visiting the sick, and driving about three times a week. At the instant hearing, appellant testified, for the most part, to more limited daily activities, but also mentioned some activities which seemingly would require a high degree of exertion.[3]
 
 
 14
 We necessarily defer to the ALJ's evaluation of appellant's credibility, especially where it is supported by substantial evidence and specific findings. Frustaglia v. Secretary of HHS, 829 F.2d 192, 195 (1st Cir. 1987). The ALJ credited appellant's subjective complaints of pain only to the extent consistent with the medical evidence, indicating the existence of mild pain. Although the appellant's combination of conditions precluded his returning to his past relevant work as truck driver, the ALJ further found that appellant retained the capacity to engage in the full range of light and sedentary work.
 
 
 15
 Although we have not located in the record any residual functional capacity assessments, other than those associated with appellant's mental impairment, we think the ALJ made a competent, commonsense judgment about appellant's exertional functional capacity based on the medical findings. See Gordils v. Secretary of HHS, 921 F.2d 327 (1st Cir. 1990) (although ALJ is ordinarily not qualified to assess residual functional capacity based on bare medical record, he may do so as long as he does not overstep the boundaries of a lay person's competence); Perez v. Secretary of HHS, 958 F.2d 445, 446 (1st Cir. 1991) (a finding that claimant does not suffer from any impairment posing significant exertional restrictions would obviate the need for medical assessment of exertional residual functional capacity).
 
 
 16
 In Gordils, we upheld a lay fact finder's conclusion that a diagnosis of "weaker back" did not preclude sedentary work. There we said we might be troubled by a lay fact finder's opinion that a claimant was capable of the more physically demanding efforts required by light work. In this case, however, we need not pause to consider the ALJ's "light work" conclusion, because his alternate finding that appellant was "not disabled" from performing the full range of sedentary work was, on the basis of the medical record before us, well within the ALJ's competence.
 
 
 17
 Accordingly, we also reject appellant's challenge to the use of the grid instead of reliance on a vocational expert. Rodriguez-Pagan v. Secretary of HHS, 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012 (1988). The ALJ consulted the grid only after determining that appellant's alleged non-exertional impairments did not significantly affect his ability to engage in the full range of work in the sedentary jobs category. Considering appellant's age (46 years old), education (7th grade level) and work experience (semi-skilled, non-transferrable skills), the ALJ properly reached the alternate conclusion that the grid directs a finding of "not disabled". 20 C.F.R. Part 404, Subpt. P, App. 2, Table 1, Rule 201.19. There thus was no prejudice in the ALJ's failure to ask the vocational expert about how plaintiff's non-exertional impairments might affect his ability to perform light or sedentary work.
 
 
 18
 For the reasons stated, the judgment of the district court is affirmed.
 
 
 
 [1]
 Appellant filed two previous applications alleging the same onset date. The earlier applications were denied on September 30, 1987. The denial was affirmed by the Appeals Council, and no further appeal was taken. There appears to be no colorable challenge here to the finality of that decision. Califano v. Sanders, 430 U.S. 99 (1977); Dvareckas v. Secretary of HHS, 804 F.2d 770 (1st Cir. 1986)
 
 
 [2]
 The ALJ's and magistrate's reports well summarize the lengthy record, which includes a miscellany of physical complaints and medical reports. We recap here only those record parts necessary to our decision
 
 
 [3]
 Although appellant stated that he spent much of his time in bed or in a hammock due to weakness and pain, when asked about his personal relationships he mentioned that not long ago, when his "blood pressure went up," he took a hammer and broke a door