USCA1 Opinion

 

 February 15, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1861 ANA L. OCASIO VAZQUEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. __________________ ERRATA SHEET The opinion of this Court issued on February 9, 1993, is ammended as follows: On cover sheet "February 9, 1993" should be corrected __________________ to read "February 9, 1993". _________________ February 9, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1861 ANA L. OCASIO VAZQUEZ, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges. ______________ ___________________ Juan A. Hernandez Rivera and Raymond Rivera Esteves on ________________________ _______________________ brief for appellant. Guillermo Gil, United States Attorney, Maria Hortensia _____________ _______________ Rios, Assistant United States Attorney, and Robert J. Triba, ____ _______________ Assistant Regional Counsel, Department of Health and Human Services, on brief for appellee. __________________ __________________ Per Curiam. Ana L. Ocasio Vazquez (claimant) appeals ___________ from a district court judgment affirming the decision of the Secretary of Health and Human Services denying her application for disability benefits. For the reasons stated below, we affirm. BACKGROUND Claimant was born on September 25, 1946, and applied for benefits when she was forty three years old. She has a seventh grade education and does not speak English. Between 1970 and 1988, she was employed as a sewing machine operator. In 1978, she suffered trauma to her left knee and underwent a left medial meniscectomy. She returned to work but injured the same knee in 1982. Claimant continued to work until March 15, 1988, when pain in her left leg worsened. She was hospitalized for several days and, thereafter, did not return to work. On February 2, 1990, claimant filed her application for benefits alleging that she was disabled by phlebitis in her left leg, sinusitis, headaches, back pains, and nerves.1 She claimed that she could not work because: My leg becomes swollen and my two legs go numb. The backache and the headaches are frequent. At night, I don't sleep much. Before, I used to turn the house upside down [to give it a thorough cleaning] but I can't do it anymore. ____________________ 1. Phlebitis is inflammation of a vein. See Dorland's ___ _________ Illustrated Medical Dictionary 1279 (27th ed. 1988). _________________________________ Sinusitis is inflammation of a sinus. Id. at 1531. ___ -2- The Social Security Administration denied claimant's application initially and on reconsideration. Claimant obtained a hearing before an Administrative Law Judge (ALJ) on March 19, 1991. She was represented by an attorney. In addition to the claimant, a medical expert (ME) and a vocational expert (VE) testified. At the hearing, claimant reiterated her claims about her leg and back conditions, as well as headaches. She testified that her headaches are relieved by medication, but that the relief is only temporary. She also complained of pain and numbness in her upper left shoulder, dizzy spells, and "teary and itchy" eyes. With respect to her physical limitations, claimant testified that she could not sit for more than one half hour at a time, that she could not walk a distance of more than four or five houses before pain in her back and legs caused her to return home, and that sometimes her leg pain was so strong that she had to lie down.2 The ME testified that claimant had only a very mild loss of movement in her knee and suffered from "superficial phlebitis, which though painful when occurring, is ____________________ 2. Although claimant testified that she did not think that she could work, she also testified that she had not tried to find a job because: I don't feel capable. I don't know what kind of work to look for because nowadays one has to have a degree to get a comfortable job and I don't have it. -3- inconsequential."3 He concluded that "in terms of her functioning, there isn't a great degree of limitation." With respect to claimant's back pain, the ME testified that her condition "at no time is characterized as abnormal." He found no evidence of objective neurological pain. In summation, the ME testified that "[he didn't] see the severity in any of the conditions that [claimant] mentioned," even as a whole, and that she should try to find a job that did not involve repetitive foot movements. The VE identified claimant's former work as a sewing machine operator as light and semi-skilled. The ALJ posed a hypothetical to the VE which assumed that claimant can sit for five hours in an eight hour day; can stand for three to four hours in the same period; can lift ten pounds frequently, and twenty-five pounds occasionally; can pull and push with her hands, but not make repetitive leg movements; and can bend and squat occasionally.4 The VE concluded that claimant could not do her past work as a sewing machine operator, because it required her to sit all day and to ____________________ 3. The ME testified that "superficial phlebitis is an inflammation of the superficial veins in the legs and the varicose veins, as we commonly know them are the ones seen through the skins, they sometimes swell get reddish and could be very painful, but besides being temporarily uncomfortable, it is not a condition that's considered serious." 4. The hypothetical also assumed that claimant was somewhat limited in her ability to work at unprotected heights, around operating machinery, or in an environment where she would be exposed to extreme changes in temperature. -4- alternate her legs frequently. However, he identified three other jobs within the clothing industry--garment bagger, spot cleaner, and garment inspector--that claimant could perform. In these jobs, the VE testified, claimant could change her position at will. The VE further testified that claimant could perform these jobs if she had mild pain. The ALJ found that the combined effect of claimant's status post left meniscectomy, status post left superficial phlebitis, and sinusitis are severe. He also found that claimant is unable to perform her past work. However, the ALJ concluded that claimant has the residual functional capacity to perform within sedentary to light exertional demands.5 The AlJ further concluded that claimant's allegations of left leg and knee pains do not disable her from performing sedentary to light work. Finally, the ALJ ruled that, based on the testimony of the vocational expert and application of the Grid, claimant is not disabled at step five of the sequential analysis because there are other jobs that she can perform. ____________________ 5. The ALJ went on make specific findings that claimant has the capacity: to perform the physical exertion requirements of work except for sitting over five hours, standing and walking over three to four hours, lifting and carrying over 10 pounds frequently and 25 pounds occasionally, performing repetitive actions with her lower extremities and exposure to unprotected heights, moving machinery or abrupt changes in temperature. -5- The Appeals Council denied review. An appeal was taken to the district court, where a magistrate-judge concluded that the Secretary's decision was supported by substantial evidence. The district court adopted the magistrate's report and recommendation. This appeal followed. MEDICAL HISTORY The medical record is well-summarized in the ALJ's report, and we need only provide a brief overview here. In late February and early March 1988, claimant saw doctors at the State Insurance Fund for pain and swelling in her left knee. On March 21, 1988, claimant was hospitalized for these complaints. A left leg venogram was negative for thrombosis, but an x-ray indicated joint space narrowing compatible with osteoarthritis. Claimant was prescribed an anti-inflammatory medication and discharged on March 25, 1988. At the time of discharge, she was not experiencing leg discomfort and there were no restrictions on her activities. After her release from the hospital, claimant underwent further tests and her left leg condition was diagnosed as superficial thrombophlebitis. She continued to be seen by doctors at the State Insurance Fund for complaints of pain in her left leg. A questionnaire completed by her personal physician, Dr. Justimo Betancourt, on March 23, 1990, indicates that she had difficulty walking on her left leg, but had no inflammation. Dr. Betancourt also reported that -6- claimant had a history of maxillary sinusitis and that she had occasional dizzy spells. An internist evaluation done by Dr. Isabel Cestero, on March 30, 1990, noted that claimant complained of pain and numbness in her left leg, as well as swelling if she remained standing. Laboratory results for the left knee were normal, but a back x-ray indicated minimal narrowing of the lumbo sacral spine at L5-S1. Tests revealed some limitation in mobility in the left knee (0 - 100 out of a possible range of 0 - 120 ). The diagnosis was status post left meniscectomy and status post left superficial phlebitis. On September 21, 1990, Dr. Betancourt reported findings similar to those he reported on March 23, 1990, although he also noted left leg skin changes with edema. On September 28, 1990, an x-ray of claimant's cervical spine showed straightening secondary to muscle spasms, as well as minimal levoscoliosis. DISCUSSION On appeal, claimant raises two issues. First, claimant argues that the ALJ failed to give proper consideration to her subjective complaints of disabling pain. Second, claimant contends that the ALJ's conclusions about her physical exertional capacity are not supported by substantial evidence because they were reached without any assessment of residual functional capacity by a physician. -7- With respect to claimant's argument that the ALJ failed to properly evaluate her claim of subjective pain, we note that although it was considered and rejected by the magistrate, it was not encompassed in claimant's objection to the magistrate's report. It is well-settled in this circuit that a party may not obtain appellate review of an issue determined by a magistrate when the party has failed to file a timely objection to the magistrate's determination of the issue as required by 28 U.S.C. 636(b). See Thomas v. Arn, ___ ______ ___ 474 U.S. 140, 147-48 (1985); Keating v. Secretary of Health & _______ _____________________ Human Services, 848 F.2d 271, 273 (1st Cir. 1988) (per _______________ curiam); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d ______________________ ______________ 603, 605 (1st Cir. 1980). Accordingly, the issue is waived. We add that even if we were to consider the issue, we would disagree. Claimant was questioned regarding her daily activities, functional restrictions, medication, and frequency and duration of pain in conformity with the guidelines set out in Avery v. Secretary of Health & Human _____ ____________________________ Services, 797 F.2d 19 (1st Cir. 1986).6 In light of the ________ lack of medical evidence to suggest an objective basis for ____________________ 6. Although more thorough questioning at the hearing regarding claimant's daily activities would have been preferable, the record included a questionnaire which elicited this information from her. Claimant stated that she spent most of the time lying down, but also stated that she cooked occasionally and that she visited close relatives. -8- disabling pain, the ALJ, who observed claimant's demeanor at the hearing, was entitled to make a credibility determination regarding claimant's pain, Da Rosa v. Secretary of Health & _______ ______________________ Human Services, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam), ______________ and to conclude that her pain did not disable her from performing within sedentary to light exertional demands. See ___ Perez v. Secretary of Health & Human Services, 958 F.2d 445, _____ _____________________________________ 448 (1st Cir. 1991) (per curiam). The ALJ's finding that claimant has the residual functional capacity to do sedentary to light work is slightly more problematic, though we ultimately conclude that it is supported by substantial evidence. It is true that we have held that an ALJ is not qualified to interpret "raw medical data" in functional terms. See Perez, 958 F.2d at 446. We ___ _____ have also stated, however, that the Secretary is not precluded from rendering common-sense judgments about functional capacity based on medical findings." Gordils v. _______ Secretary of Health & Human Services, 921 F.2d 327, 329 (1st _____________________________________ Cir. 1990) (per curiam). Here, there is no residual functional capacity analysis by an expert in the record. We find, however, that the ALJ could make a determination that claimant was not disabled for the following reasons. First, the impairments in the record appear to be "relatively mild" in the sense that the reports show few symptoms that would affect ability to do work. See Santiago v. Secretary of ___ ________ ____________ -9- Health & Human Services, 944 F.2d 1 (1st Cir. 1991) (per _________________________ curiam). Second, the ALJ's "common-sense judgment" was bolstered by the testimony of a medical expert that "there isn't a great degree of limitation" on claimant's functional capacity, that he "[did not] see the severity" in any of the conditions she mentioned, and that claimant should try to find a job that did not require her to make repetitive foot movements. Finally, aside from claimant's allegations of disabling pain, which we have held the ALJ was entitled to reject, the only other claimed limitation was an inability to sit or walk for an extended period of time. The hypothetical posed to the VE by the ALJ assumed the truth of this claimed limitation, and the VE identified jobs that would permit her to alternate positions at will. The judgment of the district court is affirmed. -10-