**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**Debra Ann James**

    v.                                    Case No. 18-cv-396-PB

**Nancy A. Berryhill, Acting**           Opinion No. 2019 DNH 021
**Commissioner, Social Security**
**Administration**

## MEMORANDUM AND ORDER

Debra Ann James challenges the Social Security Administration's denial of her claim for Disability Insurance Benefits. She contends that the Administrative Law Judge ("ALJ") did not support her decision with substantial evidence. The Acting Commissioner, in turn, seeks an order affirming the ALJ's decision. Because the ALJ properly accounted for James's use of a cane and her mental impairments, and based her decision on substantial evidence, I find no reversible error and affirm.

### I. BACKGROUND

James is a 42-year-old wife and mother. Administrative Transcript ("Tr.") 85, 113. The youngest of her three boys is about 17. See Tr. 85. She enjoys reading, watching television, and playing strategic video games and is trying to get back into crocheting. Tr. 95-96. For eight years, she worked at a Market Basket deli department, until she left her job because of back pain. See Tr. 86.

**A. Back, neck and hip pain**

James has a history of treatment for back, neck, and hip problems. In May, 2015, treating nurse practitioner Jennifer Thomas, APRN, noted that James had significant spasms in her neck. Tr. 344-45. During that appointment, James did not report any back or hip pain, and Nurse Practitioner Thomas determined that her gait was non-antalgic.[1] Tr. 344-45.

A few months later, things took a turn for the worse. On July 9, 2015 (plaintiff's alleged disability onset date), she visited Barrington Health Center to address back pain. Tr. 339. James rated her lower back pain level as 10/10. Tr. 339. Nurse Practitioner Thomas noted that the pain "radiated to the dermatome[2] anteriorly and right buttock." Tr. 339. She further observed an "active painful range of motion" in the lumbar spine, significantly decreased strength in both hips and one foot, an antalgic gait and an inability to heel walk. Tr. 351.

James underwent an MRI of her lumbar spine on July 21, 2015, which showed that her L4-5 had

---

[1] "antalgic: characterized by reduced response to painful stimuli." Stedman's Medical Dictionary 65 (25th ed. 1990).
[2] "dermatomic area: the area of skin supplied by cutaneous branches from a single spinal nerve." Stedman's Medical Dictionary 420 (25th Ed. 1990).

> Mild broad-based disc bulge.  Mild to moderate hypertrophic facet arthropathy,[3] with thickening of ligamentum flavum.[4] Very mild canal stenosis.[5]  [And] [m]inimal bilateral foraminal[6] narrowing.

Tr. 380.

Nurse Practitioner Thomas found "no significant change in back compared to prior [the] MRI," and told James, "if you are feeling better [I] think it would be fine for you to return to work."  Tr. 380.

James visited Kirsten Baca, M.D., on August 18, 2015.  See Tr. 625-628.  Her chief complaints were pain in the "axial low back pain, across the back," hip pain and upper thigh pain.  Tr. 625.  Dr. Baca reported that "her pain is to the point that it has made her unable to work, and her last day of work was July 9, 2015."  Tr. 625.  Straight-leg raises elicited indexed pain, but Dr. Baca evaluated James's strength as "5 out of 5 in the upper and lower extremities."  Tr. 627.  Dr. Baca cautioned,

---

[3] "arthropathy: any disease affecting a joint."  Stedman's Medical Dictionary 136 (25th Ed. 1990).
[4] "ligamentum flavum: yellow ligament; one of the paired ligaments of yellow elastic fibrous tissue, which bind together the laminae of adjoining vertebrae."  Stedman's Medical Dictionary 872 (25th Ed. 1990).
[5] "stenosis: a stricture of any canal . . . ."  Stedman's Medical Dictionary 1473 (25th Ed. 1990).
[6] "foramen: an aperture or perforation through a bone or a membranous structure."  Stedman's Medical Dictionary 605 (25th Ed. 1990).

3

however, that the exam was "limited by poor patient participation." Tr. 627.

On November 5, 2015, Frank Graf, M.D., performed a consultative orthopedic examination. Tr. 657-59. The lumbosacral examination was positive for pain on straight-leg raises in the right buttock and right posterior thigh. Tr. 658. He concluded that James was "impaired in fingering, pushing, pulling and grasping," as well as "bending, stooping, lifting and carrying." Tr. 659.

Veronica Bedeau, M.D., a non-examining state agency physician, determined on November 17, 2015, that James could perform light work with limitations. See Tr. 121-23.[7] These limitations included climbing ramps or stairs, climbing ladders or ropes, balancing, kneeling, stooping, crouching, and crawling. Tr. 121-122. Bedeau noted that those limitations were because James was "morbidly obese" with a 39.9 Body Mass Index and degenerative disc disease. Tr. 122.

---

[7] Bedeau wrote that James could perform a "20/10/6/6" work capacity. Tr. 123. These numbers refer to the maximum weight she can carry, the weight she can frequently carry, the hours per day she can stand, and the hours per day she can sit. See 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); SSR 83-10, 1983 WL 31251, at *6 ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

James underwent a consultative examination by Russell Plewinski, CRNA, at Paincare Centers Somersworth on January 6, 2016. See Tr. 772-778. She reported her back pain as a 9/10 and reported that she was unable to walk more than 150 feet, stand for more than five minutes, or sleep through the night because of the pain. Tr. 772.

In January 2016, Nurse Practitioner Thomas examined James and noted that her balance and gait were normal, but that she was experiencing "lumbar-sacral tenderness to palpation." Tr. 873.

## B. Frustration and affective instability

From June 2015 to January 2017 James received treatment at Seacoast Mental Health Center from psychiatric nurse practitioner Jonathan Hickman, PMHNP-BC, and Counselor Airi Mooers, MSW. Most of the records describe normal mental operation. For instance, in July 2015, Nurse Practitioner Hickman examined her and determined that her thought process was "logical and goal oriented," her attention and concentration were "without distractibility" and her mood and affect were "mildly anxious, [but] appropriate. Tr. 457. He diagnosed her with an unspecified bipolar and related disorder, unspecified anxiety disorder and unspecified stimulant-related disorder. Tr. 457. James "remains stable on her medication," he noted,

5

and she "has some increased anxiety due to not being able to work secondary to financial issues," but he concluded that "[n]o changes [are]" required at this time.  Tr. 485.

Those mental status findings are corroborated by other visits.  In November 2015, James's thought process remained "logical and goal directed," and her attention and concentration "without distractability," although her mood and affect became "mildly depressed, [but] appropriate."  Tr. 685.  Likewise, her thought process and attention and concentration remained the same in January 2016, although her mood and affect were "mildly depressed and anxious, [but] appropriate."  Tr. 715.

In December 2015, Counselor Mooers evaluated James. James's abilities to deal with the public and work stresses were deemed "fair," her ability to behave in a emotionally stable manner "good/fair," her ability to interact with supervisors and relate to co-workers "good," and her abilities to follow work rules, use judgment, function independently, and maintain attention and concentration "very good."[8]  Tr. 586-87.  Mooers did not identify any intellectual limitations but submitted that

---

[8] The evaluation defined "Very Good" as "ability to function in this area is more than satisfactory;" "Good" as "ability to function in this area is limited but satisfactory;" "Fair" as "ability to function in this area is seriously limited, but not precluded;" and "Poor or None" as "No useful ability to function in this area."  Tr. 585.

6

James displayed some affective instability and "frequent tearfulness/anger." Tr. 587. Counselor Mooers explained that "Debra's primary limitations are related to distress and frustration tolerance" and stated that "[s]he becomes easily frustrated by daily stressors." Tr. 586.

### C. Procedural history

James applied for a period of disability and Social Security disability benefits in August 2015 alleging disability as of July 2015 due to "back issues, rheumatoid arthritis, bulging disc, spinal stenosis, carpel tunnel left hand, hep c, asthma, mental health issues, bipolar, anxiety, throat/vocal cord issues, IBS, [and] acid reflux." Tr. 113-14. Her application was denied on November 20, 2015, Tr. at 128, and she requested a hearing, which was held on March 28, 2017 in the presence of her current counsel. Tr. 31. In June 2017, the Administrative Law Judge ("ALJ") concluded that James was not entitled to benefits because she could perform jobs that exist in significant numbers in the national economy. Tr. 42. She appealed that decision to the Appeals Council on August 15, 2017, and the Council denied her request for review. Tr. 1. James appeals from that decision.

## II. **THE ALJ'S DECISION**

The ALJ's conclusion followed from her application of the five-step, sequential analysis required by 20 C.F.R. § 416.920(a). See Tr. 31-43. At step one, the ALJ found that James had not engaged in substantial gainful activity since July 9, 2015, the alleged onset date of her disability. See Tr. 33 (citing 20 C.F.R. § 404.1571)). At step two, the ALJ determined that James was severely impaired by degenerative disc disease of the lumbar and cervical spine, hepatitis C, asthma, obesity, post-traumatic stress disorder, and an unnamed affective disorder. Tr. 33 (citing 20 C.F.R. § 404.1520(c)).

At step three, the ALJ found that James's impairments, considered individually or in combination, did not qualify as a listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 34 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 616.920(d), 416.925 and 416.926). She found that the evidence did not establish that James's musculoskeletal impairments caused an inability to walk or ambulate effectively or an inability to perform fine and gross movements. Tr. 34. The ALJ also concluded that James's mental impairments did not satisfy the listed requirements because James had only mild to moderate, and not marked or extreme limitations in her abilities

to understand information, interact with others, concentrate, and manage herself.  Tr. 34-36.

At step four, the ALJ determined that James had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with limitations with respect to climbing, crawling, crouching, and hand use.  See Tr. 36.  She also limited James's exposure to temperature extremes and pulmonary irritants and limited her to uncomplicated tasks.  Tr. 36.  The RFC allows James to have brief and superficial interactions with the public and to collaborate with supervisors and coworkers on routine matters.  Tr. 36.  Although the ALJ found that James's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she concluded that James's statements concerning the intensity, persistence, and limiting effects of those systems were not "entirely consistent" with the record.  Tr. 37.

The ALJ determined at step four that James could not return to her past relevant work as a deli clerk because it required almost constant interaction with the public.  Tr. 41.  She then found, at step five, that James was not disabled because she could work as a garment sorter, laundry sorter, or vending machine attendant, all of which were jobs that existed in significant numbers in the national economy.  Tr. 42.

### III.  STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  See 42 U.S.C. § 405(g).  That review is limited, however, "to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the ALJ's findings of fact, so long as those findings are supported by substantial evidence.  Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the ALJ's factual findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion."  Id. at 770.  If, however, the ALJ derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," they are not conclusive.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).  The ALJ is responsible for determining

10

issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  Furthermore, resolving conflicts in the evidence is the exclusive role of the ALJ.  Id.

## IV.  ANALYSIS

James raises two points on appeal.  First, she argues that the RFC does not adequately account for her use of a cane to walk.  See Doc. No. 7-1 at 3.  Second, she asserts that the ALJ's RFC determination neglected her "low tolerance for distress and frustration."  See Doc. No. 7-1 at 4.[9]  I am not persuaded by either argument.

### A. Cane use

An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  When determining a claimant's RFC, an ALJ need not consider conditions for which there is only "a paucity of medical evidence in the record." Perez v. Sec'y of Health & Human Servs., 958 F.2d 445, 447 (1st Cir. 1991).  An ALJ "is not qualified to interpret raw data in a medical record." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st

---

[9] The analysis section of the plaintiff's memorandum consists of four sentences for the former contention, three for the latter, and no citations to any case, regulation, or Social Security Ruling.  See Doc. No. 7-1 at 3-4.

Cir. 1996) (citing Perez, 958 F.2d at 446).  At the same time, it is the duty of the ALJ to "determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz, 955 F.2d at 769).

Here, the ALJ properly supported her RFC determination with substantial evidence with respect to James's use of a cane.

The ALJ acknowledged that James "uses a cane if she is walking for more than a block," and that "[s]he has used a cane since 2015 . . . ."  Tr. 37.  The ALJ also noted, correctly, that the cane "has not been prescribed by a doctor."  Tr. 37. This accords with the hearing testimony.  When the ALJ asked, "Did your doctors prescribe you the cane or [did you] just pick[] it up on your own and start using it," James replied "I picked it up on my own because I was having problems walking." Tr. 91-92.  James also testified that her "back doctor and [] physical therapy doctors know that I use the cane for any type of walking," but that "they haven't expressed too much of [an] opinion" about its efficacy or necessity.  Tr. 92.

A cane is "medically required" and to be used in an RFC hypothetical only if there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing." SSR 96-9P, 1996 WL 374185 at *7.  James points to no such medical documentation in the record.  The

opinion of Dr. Bedeau mentioned that James "claims to ambulate with a cane or brace," Tr. 117, but did not conclude that such use was medically required. Cf. Tann v. Berryhill, 2017 DNH 070, 2017 WL 1326235, at *5 n.6 (D.N.H. Apr. 10, 2017) ("Statements in a medical record that merely repeat a claimant's subjective complaints are not medical opinions . . . .") (citation omitted).  During the hearing, the ALJ asked whether any doctor had put any restrictions on her activities.  See Tr. 94.  James told her that "the physical therapy people they told me walking is good but don't try to overdo it by, like, hiking.  So a little walking is good but trying to hike is not good."  Tr. 94. The ALJ's determination that the cane was not medically required was supported by substantial evidence.

James points to a post-hearing note from her primary care provider, Jennifer Willard, APRN, that she "uses a cane as needed to assist with ambulation when back pain is more severe." Tr. 21.  But that note does not state that its use is "medically required" or even that Nurse Willard recommends its use. Cf. SSR 96-9P, 1996 WL 374185 at *7.  And James's contention that the Appeals Council did not address the note, see Doc. No. 7-1 at 3, is simply false.  See Tr. 2 (explaining that evidence submitted after the ALJ's decision "does not relate to the period at issue").

13

There is no medical evidence that James's use of a cane was medically required and the ALJ adequately explained why it was not included in the hypothetical or the RFC. Cf. Durfee v. Berryhill, No. CV 16-079M, 2017 WL 877272, at *5 (D.R.I. Feb. 15, 2017), R. & R. adopted, No. CV 16-79-M, 2017 WL 875825 (D.R.I. Mar. 3, 2017) (affirming ALJ decision omitting cane from RFC where claimant submitted no evidence other than his own testimony that it was medically required).  The ALJ did not err by excluding the cane from the RFC assessment and her decision is supported by substantial evidence.

**B. Frustration and mental instability**

A person's "residual functioning capacity 'is the most [he or she] can still do despite [his or her] limitations.'" Purdy v. Berryhill, 887 F.3d 7, 10 n. 2 (1st Cir. 2018) (quoting 20 C.F.R. § 416.945(a)(1)).  The claimant bears both the burden of production and the burden of proof to show that she is "unable to do past work due to the significant limitation." Baillargeon v. Berryhill, 2019 DNH 009, 2019 WL 192887 at *5 (D.N.H. Jan. 15, 2019) (quoting Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001)); 20 C.F.R. § 416.920.  The ALJ must, however, "specify the evidentiary basis for his RFC determination." Canfield v. Apfel, 2001 DNH 078, 2001 WL 531539, at *5 (D.N.H. Apr. 19, 2001); SSR 96-8p, 1996 WL 374184, at *7.

14

The ALJ's RFC assessment accounts for the opinions of Nurse Practitioner Hickman and Counselor Mooers and adequately accounts for James's emotional and affective instability.

The decision assigns "significant weight" to the assessment of Nurse Practitioner Hickman and Counselor Mooers, which rated James's ability to deal with work stress "fair" and her ability to behave in an emotionally stable manner as "good/fair." Tr. 41 (citing Tr. 586-88). This accords with the RFC assigned to James. The ALJ decided that she can perform "uncomplicated tasks that can typically be learned in less than 30 days; can have brief and superficial interactions with the public; and can collaborate with supervisors and coworkers on routine matters." Tr. 36. James objects that the RFC does not refer to her "low tolerance for distress and frustration" or the fact that she becomes "easily frustrated by daily stressors." Doc. No. 7-1 at 4. But the limitation to uncomplicated tasks is responsive to her frustration, and the ALJ found that James was unable to perform her past work as a deli clerk because it "[r]equired almost constant interaction with the public." Tr. 41.[10]

---

[10] Nor does James identify any limitation that should have been in the RFC. Cf. Veach v. Comm'r of Soc. Sec. Admin., Civil No. 1:13-CV-76-DBH, 2014 WL 35362, at *4 (D. Me. Jan. 6, 2014) (noting that error is harmless if there is no medical record identifying greater limitations than those included in the RFC assessment).

Furthermore, the ALJ reasonably concluded that James's frustration and mood instability are not as disabling as she believes them to be. The ALJ recognized that James had been treated for an affective disorder, as well as anxiety disorder. Tr. 39. The decision also explains, however, that the mental status exams of examining Nurse Practitioner Hickman document normal tone, speech, thought, associations, judgment, attention, and concentration. Tr. 39 (citing Tr. 685, Tr. 715) (additional citations omitted). She found the latter more informative and was permitted to make this judgment. Cf. Floyd v. Berryhill, 2017 DNH 114, 2017 WL 2670732, at *7 (D.N.H. June 21, 2017) (affirming decision where ALJ "discounted [claimant's] subjective complaints relating to her mental impairments" by relying on "supportably normal mental status examinations").

Other medical sources similarly support the RFC's mental and social limitations. Doctor Vallery, in a comprehensive psychological profile, stated that James was able to understand instructions and that she can remember "short and simple instructions, but not lengthy and detailed ones given her anxiety and depression." See Tr. 653. The decision discusses both findings, Tr. 39, 40, and limits James to "uncomplicated tasks" to reflect this. See Tr. 36. Doctor Stenslie similarly found that James was "not significantly limited" in her ability

16

to carry out short and simple instructions.  Tr. 123.  The RFC accurately reflects "the most [James] can still do despite [her] limitations." Purdy, 887 F.3d at 10 n. 2 (quoting 20 C.F.R. § 416.945(a)(1)).  I find no reversible error.

## V.   CONCLUSION

The ALJ's RFC assessment is supported by substantial evidence and contains no harmful legal error.  Pursuant to sentence four of 42 U.S.C. § 405(g), I grant the Acting Commissioner's motion to affirm (Doc. No. 10) and deny Debra Ann James's motion to reverse (Doc. No. 7).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul Barbadoro
Paul Barbadoro
United States District Judge

February 5, 2019

cc:  Christopher G. Roundy, Esq.
     Michael L. Henry, Esq.

17